**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LUCIANO AVENDANO MONTOYA,
also known as Avendan Montoya
Luciano, also known as Jose
Fernandez, also known as Alvaro
Sanchez,

      Defendant - Appellant.

No. 06-4103
(D.C. No. 2:04-CR-673-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

Defendant-Appellant Luciano Avendan Montoya appeals from the district

court's decision not to grant him a downward departure pursuant to the safety

valve provisions of 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2.  Had the

district court applied the safety valve reduction, Mr. Montoya's Guideline range

would have been 87 - 108 months' imprisonment, rather than the 120 - 135 month

_____

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

range the district court applied in the absence of the safety valve. The district court refused to apply the safety valve because it determined that Mr. Montoya had been less than truthful with the government regarding his previous drug activity and the identity of his drug supplier. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

After receiving a tip from a confidential informant that Mr. Montoya was involved in the transportation of methamphetamine, on September 3, 2004, police in Utah County, Utah performed a traffic stop on Mr. Montoya's vehicle. Although Mr. Montoya was stopped as the result of an equipment violation, a drug-sniffing dog was called to the scene. The dog indicated that drugs were hidden within the vehicle, a search was performed, and drugs were found. More specifically, police located four baggies of methamphetamine, $7,930 in cash, and a pay/owe sheet inside a hidden compartment in the passenger side airbag. Despite the presence of a passenger in the vehicle, Mr. Montoya admitted that the drugs and money belonged exclusively to him.

The government charged Mr. Montoya with knowingly and intentionally possessing with intent to distribute fifty or more grams of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count 1), and knowingly and unlawfully possessing cocaine, in violation of 21 U.S.C. §

844 (count 2). Following an unsuccessful suppression motion, Mr. Montoya entered a plea of guilty to count 1 on February 1, 2006. In return for his plea, the government agreed to dismiss count 2. It also agreed, based on the information known at the time, that Mr. Montoya would fall within the safety valve provisions found within 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2, provided that he fully revealed all information he had regarding the offenses with which he was involved. As part of his plea, Mr. Montoya stipulated that he had possessed 324 grams of methamphetamine, of which 239.7 was actual methamphetamine, and that this was a distributable amount. He also admitted possessing $7,930 as proceeds from methamphetamine distribution.

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report (PSR) which identified Mr. Montoya's base offense level as 34 and his criminal history category as I. See ROA Vol. V at 3-4. Assuming a two-level reduction for the safety valve, and applying a three-level reduction for acceptance of responsibility, the PSR calculated Mr. Montoya's adjusted base offense level as 29. Given a base offense level of 29 and criminal history category of I, Mr. Montoya's advisory Guidelines sentencing range was 87 to 108 months' imprisonment. See id. at 8. The PSR also noted, however, that, in the absence of the safety valve, the mandatory minimum sentence of ten years' imprisonment found within 21 U.S.C. § 841(b)(1)(A) would apply.

On April 18, 2006, the district court held a sentencing hearing. At that

time, counsel for both Mr. Montoya and the government informed the court that the government did not believe Mr. Montoya had been completely forthcoming regarding his involvement in the crimes for which he was arrested. The government claimed that earlier that morning an Immigration and Customs Enforcement (ICE) Agent "went in and attempted to speak with [Mr. Montoya] and he was not cooperative at all." ROA Vol. IV at 5. The government further explained that the ICE Agent "went back two more times and gave [Mr. Montoya] three opportunities to be forthcoming," and that "[i]t was not until the third interview that the agent felt like the defendant really came around and said anything at all." Id. Even after that point, however, "the agent was clearly left with the impression that [Mr. Montoya] would only tell [him] what [Mr. Montoya] knew [the agent] already knew." Id.

After listening to counsels' arguments, giving Mr. Montoya an opportunity to speak, and expressing some misgivings about which party bears the ultimate burden of persuasion on the applicability of the safety valve, the district court found "that whether the burden rests with the defendant or rests with the government, that based on what I have been given here today I'm finding that the defendant has . . . not met the five requirements." Id. at 13. The court further noted that the safety valve "anticipate[s] a truthful dissemination of all of the information that he knows about these offenses," and that "I have a hard time believing that he couldn't provide more information than he has." Id. at 14. As a

- 4 -

result, the district court chose not to apply the safety valve reduction and imposed the mandatory minimum sentence of 120 months' imprisonment, followed by 60 months' supervised release.

On appeal, Mr. Montoya argues that he was entitled to the safety valve reduction because he provided the government with all the information he possessed about the offense. He also argues that the district court committed reversible legal error because once a defendant has met the burden of showing that he has provided all information related to the offense, "the Government has the burden to rebut the defendant's arguments with specific facts, as opposed to mere assertions." Aplt. Br. at 5.

## Discussion

We review the district court's determination of eligibility for safety valve relief under § 3553(f)(1)-(5) and § 5C1.2(a) for clear error. United States v. Stephenson, 452 F.3d 1173, 1180 (10th Cir. 2006). To the extent the district court interpreted either the scope or meaning of the safety valve provisions, our review of those interpretations is de novo. Id. Lastly, our review is colored by the fact "that the district court's application of the safety valve is fact specific and dependant on credibility determinations that cannot be replicated with the same accuracy on appeal." United States v. Virgen-Chavarin, 350 F.3d 1122, 1129 (10th Cir. 2003).

In 18 U.S.C. § 3553(f), Congress provided defendants relief from mandatory minimum sentences under certain limited circumstances. Both § 3553(f) and U.S.S.G. § 5C1.2(a) allow the sentencing court to impose punishment pursuant to the Guidelines and "without regard to any statutory minimum sentence" when the court finds that five criteria have been met. It appears that only the fifth criterion is at issue in this case. The fifth criterion limits the circumstances in which the sentencing court may disregard a mandatory minimum sentence to those in which:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

It is well-established that the defendant bears the burden of proving, by a preponderance of the evidence, that the safety valve provisions apply. See Stephenson, 452 F.3d at 1179; United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996). The scope of the disclosure required to satisfy § 3553(f)(5) and § 5C1.2(a)(5) is very broad. See United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995). Thus, the defendant "must tell the Government about both his or her involvement, and also what he or she knows about the involvement of other participants in the crime." Verners, 103 F.3d at 110. In other words, the defendant must "truthfully tell all he knows to the government." Acosta-Olivas,

71 F.3d at 379.

In the instant case, the district court determined that Mr. Montoya had not truthfully told the government all he knew about his offense and the other individuals involved. At Mr. Montoya's sentencing hearing, the government informed the court that during the course of his interview with an ICE Agent, Mr. Montoya claimed that he met his supplier at a bar and that the supplier fronted him drugs, but that Mr. Montoya did not know the individual and could not identify him. Eventually Mr. Montoya did identify his source as an individual nicknamed "Chewy." He also described Chewy as being six-feet tall and weighing 200 pounds. Because that physical description and nickname matched another individual who was known to be a drug distributor in the Ogden, Utah area, and who had recently been indicted, the government obtained a photograph of that individual to attempt to obtain a positive identification from Mr. Montoya. When shown the photograph of that individual, however, Mr. Montoya would not admit that the man in the picture was his supplier.

The district court also heard evidence that despite being in possession of nearly $8,000 in cash at the time of his arrest, during the first two interviews, Mr. Montoya would not reveal where the cash came from or the quantity of drugs he had previously sold. At first, Mr. Montoya said he had only previously sold drugs on one occasion, but then his story changed, and he claimed he had only previously sold drugs twice. At last, during the third interview, Mr. Montoya

admitted to selling drugs on five prior occasions and that the money he possessed at the time of his arrest derived from those sales.

Mr. Montoya's counsel argued in response that Chewy is a very common nickname and that "[t]here was detail from the start and my client answered questions, and then the detail stopped and my client didn't have everything [the agent] wanted." ROA Vol. IV at 8. His counsel also said that the passage of time might explain Mr. Montoya's lack of detailed information. When given a chance to speak, Mr. Montoya apologized for his crime, asked for a considerate sentence, described how he had come to realize the importance of his family, and requested that he be permitted an appeal if the court chose not to apply the safety valve. Id. at 11.

In denying the safety valve, the district court noted that it was concerned about Mr. Montoya's failure to provide more assistance to identify his supplier. The district court explained that it might have been more willing to apply the safety valve had "[Mr. Montoya] done something more to lead the authorities to some evidence that would allow them to have a better chance of finding out who" his supplier was. Id. at 13. It also explained that it was persuaded by the government's argument that an individual involved in distributing such a large amount of drugs would know the identity of his supplier. The district court concluded that Mr. Montoya was "completely capable of persuading the authorities of something," and that "[i]f the evidence suggested that this was a

one time deal, and especially if it involved smaller quantities, I could more easily believe that he didn't know more than he knows." Id. at 14.

Based on the foregoing, the district court did not commit clear error in determining that Mr. Montoya failed to meet his burden of truthfully telling all he knew to the government.[1]  Clearly, Mr. Montoya's story changed a number of times throughout the course of three interviews.  The district court was, therefore, free to infer that Mr. Montoya's final rendition of the facts underlying his offense—that all he knew about his supplier was that his nickname was Chewy and that the $8,000 in cash came from only five previous drug sales—was yet another in a long series of lies.  Also, the district court's assumption that someone distributing 324 grams of methamphetamine would know more about his supplier than Mr. Montoya claimed he knew was a reasonable one.  Cf. Stephenson, 452 F.3d at 1181.

Mr. Montoya argues that he could not have been expected to identify the man in the photograph because a great deal of time had passed since his arrest. But the district court did not base its denial of safety valve relief only on Mr. Montoya's failure to identify the man in the photograph.  Instead, it based its denial on the overall lack of information conveyed regarding Mr. Montoya's

---

[1]  Because we hold that Mr. Montoya failed to meet his initial burden to demonstrate that he had truthfully told all that he knew, we need not decide whether, at some point, the government is tasked with rebutting a defendant's argument that he qualifies for a safety valve reduction.  See Aplt. Br. at 10-15.

supplier in conjunction with the large amount of narcotics and cash that he possessed. That was an allowable basis on which to deny safety valve relief.

Mr. Montoya also argues that "[t]he Government's claims that [he] did not provide truthful information rings [sic] hollow because they were already prosecuting 'Chewy' and did not need [his] identification in order to prosecute." Aplt. Br. at 9. Whether the government needed his identification, however, is irrelevant, and Mr. Montoya admits as much in his brief on appeal. See id. at 10 ("The safety valve . . . does not require that the information supplied to the Government be helpful . . . ."). What does matter is whether Mr. Montoya was entirely truthful and forthcoming in providing information to the government regarding his offense and those connected with it. The district court found that Mr. Montoya had not been completely truthful and forthcoming in his discussions with the ICE Agent, and, as discussed, that determination was not clear error. Thus, the district court correctly refused to apply the safety valve reduction, and Mr. Montoya's sentence of 120 months' imprisonment must stand.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge